UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAVID TALYN PECK,

                Petitioner,

v.

PATRICK GLEBE,

                Respondent.

CASE NO. 3:15-CV-05639-RBL-DWC

REPORT AND RECOMMENDATION

NOTED FOR: JANUARY 1, 2016

The District Court has referred this action to United States Magistrate Judge David W. Christel. Petitioner David Talyn Peck seeks § 2254 habeas relief from his 2013 conviction by jury verdict for first-degree robbery and third-degree theft. Dkt. 6 at 7, 8. Petitioner raises one claim for relief, whether he was denied the right to present a complete defense, in violation of the Sixth Amendment, when the trial court excluded the defense's "other suspect" evidence. Dkt. 6 at 5. Respondent concedes Petitioner properly exhausted his state remedies within the meaning of 28 U.S.C. § 2254(b) but contends Petitioner's claim fails on the merits. Dkt. 12 at 5. Petitioner was served with Respondent's Answer on October 20, 2015. *See* Dkt. 12. Petitioner's

reply was due November 9, 2015 in accordance with Local Rule 7, but Petitioner failed to file a reply. *See* Dkt. 8.

The Court recommends denying the Petition because Petitioner has failed to show the state appellate courts' adjudication of Petitioner's exclusion of evidence claim was contrary to, or an unreasonable application of, clearly established federal law. The undersigned also recommends denying the issuance of a certificate of appealability.

## BASIS FOR CUSTODY AND FACTS

Petitioner was convicted of first degree robbery and third-degree theft. Dkt. 13, Exhibit 7, 8. He was sentenced to 136 months of confinement. *Id.*

The Washington Court of Appeals summarized the facts in Petitioner's case as follows:

> On March 11, 2012, Moe Jones closed a Clark County Pizza Hut restaurant at 1:25 AM. One of her tasks was to take the evening deposit to the bank. Elisabeth McMurray, who worked that evening as a delivery person, was to follow Jones to the bank where Jones could make the deposit. As Jones was getting into her car with the deposit, a man grabbed the door, stuck a gun in her face, and said, "Give me the money." Report of Proceedings (RP) (July 1, 2013) at 40. Jones handed him the money.
>
> McMurray, noticing that Jones was in trouble, took the Pizza Hut magnetic sign off her car and hit the man over the head with it. When Jones yelled at her that the man had a gun, McMurray ran to her car and the man ran through the bushes down a trail leading to an adjacent apartment complex.
>
> Both Jones and McMurray described the man as a five-foot seven, 140 pound, white male wearing a black wig, sunglasses and bulky dark clothing, and carrying a black handgun. Deputies searched the area and recovered a wig in a recycling bin at the adjacent apartment complex. They also detained Ryan Stallman, who was walking in the vicinity of the Pizza Hut with his girlfriend. When the deputies took Jones and McMurray to see Stallman, they both said that Stallman was not the robber. The deputies released Stallman after verifying his alibi, taking his statement, and obtaining a DNA sample.
>
> DNA testing of the wig revealed the presence of [Petitioner's] DNA. It also excluded Stallman as a contributor to the major DNA component on the wig.

REPORT AND RECOMMENDATION- 2

1    Detective Jared Stevens interviewed [Petitioner] in the Clark County Jail, where
     [Petitioner] was being held on an unrelated charge. Detective Stevens read
2    [Petitioner] his *Miranda*[1] rights, asked [Petitioner] about the robbery, and
     requested a DNA sample to compare to the DNA found in the wig. He told
3    [Petitioner] that submitting his DNA would be a good way to prove he was
     innocent. Detective Stevens also told [Petitioner] that if [Petitioner] did not
4    consent to the DNA swabbing, he would request a search warrant to obtain the
     sample. [Petitioner] consented.

     When Detective Stevens asked [Petitioner] about the robbery, [Petitioner] denied
6    robbing the Pizza Hut and did not know why his DNA was on the wig.
     [Petitioner] then said that sometimes he "[h]as too much to drink and does crazy
7    stuff." RP (June, 21, 2013) at 21. [Petitioner] added that he had dressed up as a
     woman the previous Halloween and had worn a wig.

     A forensic scientist with the Washington State Patrol tested the DNA samples and
9    testified that the DNA from the wig was a mixed profile with [Petitioner] as the
     major contributor. She testified that because there were only trace amounts of the
10   other contributor insufficient to profile, it was very unlikely that the other
     contributor was the robber, and that only one person in 2.2 quintillion would
11   match [Petitioner's] DNA.

12   The State charged [Petitioner] with first degree robbery and third degree theft. In
     a pretrial hearing, [Petitioner] moved to suppress his statements to Detective
13   Stevens and the DNA test results. The trial court denied both motions, finding that
     [Petitioner] gave his statements voluntarily and had freely consented to giving a
14   DNA sample.

15   [Petitioner] sought to introduce as other suspect evidence that the deputies had
     stopped Stallman shortly after the robbery near the Pizza Hut restaurant. The trial
16   court denied [Petitioner's] request.

17   To undermine [Petitioner's] statement to Detective Stevens that he had dressed up
     as a woman on Halloween, a jail records supervisor testified that [Petitioner] was
18   in custody from 8/24/2011 to 1/4/2012 and from 10/28/2010 to 11/16/2010. And a
     member of the identifications unit testified that the fingerprints and photograph
19   taken from [Petitioner] during the 8/24/2011 booking matched those taken during
     his current booking.

     A jury found [Petitioner] guilty of both charged counts. At sentencing,
21   [Petitioner] sought a new trial because defense counsel failed to present an alibi
     defense. The trial court denied the motion as untimely.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). [Footnote by the Court of
24   Appeals.]

REPORT AND RECOMMENDATION- 3

1  Dkt. 13, Exhibit 13, Unpublished Opinion at 1-4.

2  **STATE PROCEDURAL HISTORY**

3  Through counsel, Petitioner appealed to the Washington Court of Appeals wherein he
4  asserted three grounds for relief:  (1) the trial court erred in finding Petitioner had voluntarily
5  consented to providing a DNA sample to police; (2) the trial court erred by denying the motion
6  to suppress the DNA evidence; and (3) Petitioner was denied the right to present a defense by the
7  trial court's exclusion of "other suspect" evidence Dkt. 13, Exhibit 9 at 1-2.  Petitioner also
8  submitted a statement of additional grounds of review, *pro se*, claiming (1) defense counsel
9  provided ineffective assistance of counsel by failing to pursue an alibi defense and failing to
10 challenge the seizure of the wig and (2) the trial court erred by admitting prejudicial evidence of
11 a photograph of the wig shown to witnesses for identification purposes and evidence Petitioner
12 was in custody during Halloween of 2010 and 2011. Dkt. 13, Exhibit 10 at 1-3. Petitioner, *pro
13 se,* filed an amended statement of additional grounds raising the same two grounds for relief.
14 Dkt. 13, Exhibit 11. The Washington Court of Appeals affirmed Petitioner's conviction in an
15 unpublished opinion. Dkt. 13, Exhibit 13.

16 Petitioner, *pro se,* sought discretionary review by the Washington Supreme Court and
17 raised one ground for review, whether the trial court improperly erred in excluding evidence of
18 the "other suspect." Dkt. 13, Exhibit 16. On June 3, 2015, the Washington Supreme Court denied
19 review without comment. Dkt. 13, Exhibit 18. On July 22, 2015, the Washington Court of
20 Appeals issued its mandate. Dkt. 13, Exhibit 19.

21 On June 2, 2015, Petitioner filed his personal restraint petition, *pro se,* with the
22 Washington Court of Appeals. Dkt. 7, Exhibit 1. According to the Washington state court's
23 docket, the State filed a response to the petition on August 20, 2015 and Petitioner filed a reply
24

to the memorandum on September 30, 2015. *See* Docket Sheet, Personal Restraint Petition of David Talynn Peck, Case No. 476347-II, Washington Court of Appeals, Division II. The matter remains pending as of October 20, 2015. *See id.*

On September 8, 2015, Petitioner filed a Motion to Stay and Abate this Habeas Petition as his Personal Restraint Petition is still pending. Dkt. 7. However, because Respondent does not challenge the exhaustion of state remedies, the Court denied Petitioner's Motion. Dkt. 14. Thus, Petitioner's pending Personal Restraint Petition is not relevant to his Habeas Petition and the Court will proceed to address Petitioner's claim on the merits.

## EVIDENTIARY HEARING

The decision to hold a hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011). A hearing is not required if the allegations would not entitle Petitioner to relief under 28 U.S.C. § 2254(d). *Landrigan,* 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see also Cullen,* 131 S. Ct. 1388 (2011). "[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state court record. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998).

Petitioner's habeas claim raises only questions of law and may be resolved by a review of the existing state court record. Therefore, the Court finds it unnecessary to hold an evidentiary hearing.

**DISCUSSION**

Petitioner presents the Court with one claim for relief, whether he was denied the right to present a complete defense, in violation of the Sixth Amendment, when the trial court excluded the defense's "other suspect" evidence. Dkt. 6 at 5. Respondent concedes Petitioner properly exhausted his state remedies within the meaning of 28 U.S.C. § 2254(b), but contends Petitioner's claim fails on the merits. Dkt. 12 at 5.

Pursuant to 28 U.S.C. § 2254 (d)(1), a federal court may not grant habeas relief on the basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." In interpreting this portion of the federal habeas rules, the Supreme Court has ruled a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts that are "materially indistinguishable" from a relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Moreover, the Court held "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An unreasonable application of Supreme Court

REPORT AND RECOMMENDATION- 6

precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court decision involves an unreasonable application of Supreme Court precedent "'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (*quoting Williams*, 529 U.S. at 407).

The Anti-Terrorism Effective Death Penalty Act ("AEDPA") requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). In addition, review of state court decisions under §2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 131 S.Ct. at 1398.

The Constitution guarantees a criminal defendant a meaningful opportunity to present relevant evidence in his own defense at trial. *See, e.g., Taylor v. Illinois,* 484 U.S. 400, 408; *Crane v. Kentucky,* 476 U.S. 683, 690 (1986). "The Supreme Court has made clear that the erroneous exclusion of critical, corroborative defense evidence may violate both the Fifth Amendment due process right to a fair trial and the Sixth Amendment right to present a defense." *DePetris v. Kuykendall,* 239 F.3d 1057, 1062 (9th Cir. 2001) (citations omitted). However, "the right to present relevant testimony is not without limitation. The right 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.' " *Rock v. Arkansas,* 483 U.S. 44, 55 (1987) (quoting *Chambers v. Mississippi,* 410 U.S. 284, 295 (1973)). Relevant evidence may be excluded for failure to comply with procedural requirements, and "any number

of familiar and unquestionably constitutional evidentiary rules also authorize the exclusion of relevant evidence." *Montana v. Egelhoff,* 518 U.S. 37, 42 (1996) (plurality opinion).

> While the Constitution ... prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.

*Holmes,* 547 U.S. 319, 326 (2006). With respect to the admission of evidence proffered by criminal defendants to show that someone else committed the crime with which they are charged, evidence of potential third-party culpability must be admitted when, under the "facts and circumstances" of the individual case, its exclusion would deprive the defendant of a fair trial. *Chambers,* 410 U.S. at 302–03 (exclusion of evidence of a third party confession violated due process when the excluded evidence was highly corroborated and the testimony was crucial to the defense).

The Washington Court of Appeals reviewed the record, rejected Petitioner's argument and upheld the trial court's exclusion of the defense's "other suspect" evidence:

> There initially was some indication that Stallman could be connected with the robbery. Shortly after the robbery, the deputies stopped Stallman who was walking nearby with his girlfriend. Stallman was not cooperative and the deputies were forced to draw their weapons before he complied. Stallman was wearing dark clothing, carrying a black replica Officer's Model air pistol, and generally fit the description Jones and McMurray had given. The deputies took Stallman into custody, gave him *Miranda* warnings, questioned him about the robbery, and obtained a DNA sample.
>
> But further investigation essentially eliminated Stallman as a suspect. The deputies recovered the wig in the opposite direction of where they had stopped Stallman. Stallman did not have any money even though the robbery had taken place only a few minutes earlier. The deputies brought Jones and McMurray to Stallman's location and both women said that Stallman was not the robber. Deputies confirmed Stallman and his girlfriend's alibi that they were visiting Stallman's uncle at a nearby motel when the robbery took place. And the DNA testing of the wig excluded Stallman.

REPORT AND RECOMMENDATION- 8

> We agree with the trial court that admission of this nonprobative evidence would have served only to confuse the jury because there was no nonspeculative link between Stallman and the charged crime. Evidence of the deputies' suspicions about Stallman were not enough to raise doubt about whether [Petitioner] committed the robbery. Accordingly, we hold that the trial court did not err in excluding evidence that Stallman was a suspect.

Dkt. 13, Exhibit 13 at 7.

Here, there was no evidence linking Stallman, or any other third party, to the robbery and theft. The mere fact Stallman was in the neighborhood at the time of the crime does not constitute non-speculative evidence that Stallman robbed Jones. Such evidence merely "affords a possible ground of suspicion" against Stallman and did not directly connect Stallman with the commission of the actual crime. *See Holmes,* 547 U.S. at 327. Furthermore, Jones and McMurray said Stallman was not the robber and the DNA testing of the wig excluded Stallman as a suspect. The evidence related to Stallman was not even probative, let alone strongly exculpatory. There is no evidence in the record to support a conclusion that Stallman committed the robbery and theft. *But see Chambers,* 410 U.S. at 284; *Cudjo v. Ayers,* 698 F.3d 752, 763–67 (9th Cir. 2012), *cert. denied sub nom. Chappell v. Cudjo,* ––– U.S. –––, 133 S.Ct. 2735 (2013) (federal habeas relief is warranted where the trial court excluded trustworthy, exculpatory, and material third party culpability evidence and the state court's rejection of the petitioner's right to present a defense claim was contrary to *Chambers.*); *Lunbery v. Hornbeak,* 605 F.3d 754, 761–62 (9th Cir. 2010) (same).[2] As a result, the exclusion of evidence under state rules did not violate Petitioner's right to present a defense. *See Chambers,* 410 U.S. at 302–03.

---

[2] Although Supreme Court precedent provides the only relevant source of clearly established federal law for AEDPA purposes, circuit precedent can be "persuasive authority for purposes of determining whether particular state court decision is an 'unreasonable application'

Although Petitioner is not satisfied with the state court's decision, he does not show, nor does the Court find, the state court (1) unreasonably applied the correct legal standard to the facts of Petitioner's case or (2) confronted facts which were materially indistinguishable from a relevant Supreme Court precedent and arrived at the opposite result. *See Williams*, 529 U.S. at 405. The Washington Court of Appeals' decision was not an unreasonable application of the *Holmes* and *Chambers* standards as to the exclusion of evidence. The Court recommends denying the Petition because Petitioner has failed to demonstrate the state court's conclusion that the "other suspect" evidence should not be admitted was contrary to, or an unreasonable application of, established federal law, or was an unreasonable determination of the facts in light of the evidence presented.

## CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only if Petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Pursuant to this standard, this Court concludes Petitioner is not entitled to a certificate of appealability with respect to this petition.

---

of Supreme court law," and in ascertaining "what law is 'clearly established.' " *Duhaime v. Ducharme,* 200 F.3d 597, 600–01 (9th Cir. 2000).

## CONCLUSION

The Court recommends denying the Petition as Petitioner has failed to show the state appellate courts' adjudication of his exclusion of evidence claim was contrary to, or an unreasonable application of, clearly established federal law. The undersigned also recommends denying the issuance of a certificate of appealability.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge.  *See* 28 U.S.C. § 636(b)(1)(C).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on **January 1, 2016** as noted in the caption.

Dated this 4th day of December, 2015.

David W. Christel
United States Magistrate Judge

REPORT AND RECOMMENDATION- 11